# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KRISTEN CARLONE AND THOMAS JOHNSON, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | Civil Action No. |
| v. | **JURY TRIAL DEMANDED** |
| MUTUAL APARTMENT PROPERTIES, L.P.; MUTUAL PROPERTIES, INC.; MAP REAL ESTATE INCORPORATED, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Kristen Carlone and Thomas Johnson ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated in order to obtain class-wide relief against the Defendants Mutual Apartment Properties, L.P. ("Mutual Apartment"), Mutual Properties, Inc. ("Mutual Properties"), and MAP Real Estate Incorporated ("MAP," collectively, "Defendants") for their unauthorized and unlawful procurement of consumer reports of their tenants and former tenants and the principals and agents of their tenants and former tenants without a permissible purpose in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA")  For their Class Action Complaint, Plaintiffs allege as follows based on (a) personal knowledge, (b) investigation of counsel, and (c) information and belief:

### Introduction

1. Defendants are real-estate companies owned and/or operated by a single individual, Stephen G. Soscia.  Mr. Soscia also owns and operates several dozen other real-estate companies that own and lease residential, commercial, retail, and office properties—many of which bear the name Mutual Properties or some variation thereof

2. Plaintiffs were tenants of one of Mr. Soscia's companies, Mutual Apartment, until March 31, 2017 when they purchased a home and vacated their apartment located at the River's Edge apartment complex at 1735 Main Street, West Warwick, RI 02893. Mutual Apartment owns the River's Edge apartment complex and Mutual Properties managed the property on behalf of Mutual Apartment. Mutual Apartment also owns another apartment complex located at 1700 Main Street, West Warwick, RI 02893 called the Cowesett Terrace.

3. After they vacated the apartment, pursuant to timely notice, a dispute arose concerning the Plaintiffs' $970.00 security deposit. The Plaintiffs demanded return of all or a significant portion of the security deposit while Mutual Apartment and Mutual Properties demanded an additional $704.00 for unsubstantiated alleged damages.

4. In connection with their decision to refer the matter to outside counsel for collection, Defendants, without Plaintiffs' authorization and without any other permissible purpose, procured the Plaintiffs' credit report from at least one (1) major credit reporting agency.

5. The procurement of their credit report without a permissible purpose constitutes an invasion of the Plaintiffs' privacy and injured the Plaintiffs as detailed *infra*.

6. Accordingly, the Plaintiffs bring this action to hold Defendants accountable for their actions which are in violation of the FCRA.

## Venue and Jurisdiction

7. This court has jurisdiction under 28 USC § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper because Defendants operate here and the complained-of conduct occurred here.

**Parties**

9. Plaintiffs are "consumers" as defined and protected by the FCRA and are residents of West Warwick, Rhode Island.

10. Mutual Apartment is a limited partnership organized under the laws of the State of Rhode Island with a principal place of business located at One James P. Murray Highway, Suite 200, West Warwick, RI 02893.

11. MAP is a corporation organized under the laws of the State of Rhode Island with a principal place of business located at One James P. Murphy Highway, Suite 200, West Warwick, RI 02893. MAP is the sole General Partner of Mutual Apartment.

12. Mutual Properties is a corporation organized under the laws of the State of Rhode Island with a principal place of business located at One James P. Murphy Highway, Suite 200, West Warwick, RI 02893. Mutual Properties' certificate of incorporation/authority was revoked by the Secretary of State on or about November 6, 2014 for failure to file its annual report for the year 2014. It has not yet been reinstated. Upon information and belief, Mutual Properties, or a successor thereto, manages all of the commercial, retail, office, and residential properties owned by a so-called "Mutual Properties" or Mr. Soscia-related entity.

**Factual Allegations Related to Plaintiffs**

13. On or about November 28, 2006, Mr. Johnson and Albert Martinelli entered into a lease agreement with Mutual Apartment as "Owner/Agent" and Mutual Properties as the "Manager of Premises" in connection with the rental of apartment number A41 in the Rivers Edge apartment complex (the "Lease").

14. In connection with the Lease, Mr. Johnson and Mr. Martinelli provided a security deposit of $970.00.

15. The Lease did not contain any information concerning access to or use or procurement of a consume report including a credit report and certainly did not authorize the Defendants to procure a credit report under any circumstances.

16. On or about September 1, 2017, Ms. Carlone, who is Mr. Johnson's sister, and Mutual Apartment executed a Lease Amendment Agreement to replace Mr. Martinelli as a tenant.

17. The Lease Amendment Agreement did not contain any information concerning access to or use or procurement of a credit report and certainly did not authorize the Defendants to procure a credit report under any circumstances.

18. After timely and dutifully making all payments required under the Lease and Lease Amendment Agreement, on February 15, 2017, Plaintiffs provided formal written notice that they would be vacating the apartment on or before March 31, 2017 and provided contact information for the return of the security deposit.

19. On April 20, 2017, Defendants provided written notice to the Plaintiffs that the total for repairs was $1,674 leaving a balance due, after application of the security deposit, of $704.00.

20. On May 10, 2017, Ms. Carlone mailed a letter disputing the repairs and their cost and demanded return of $300 of the security deposit.

21. Defendants rejected this request.

22. On May 24, 2017, Ms. Carlone advised Defendants that she would be filing suit in Small Claims Court for the return of the security deposit.

23. On June 6, 2017, Plaintiffs filed a civil action in Small Claims Court (the "Small Claims Action") against Mutual Apartment seeking the return of a portion of her security deposit.

24. On June 9, 2017, Plaintiffs served Mutual Apartment with the relevant complaint. Janet Ruthowski, an employee of Defendants', signed the summons acknowledging service.

25. On June 15, 2017, Mutual Apartment filed a Motion to Dismiss the Small Claims Action.

26. On June 23, 2017, counsel for Mutual Apartment and Mutual Properties mailed a letter to Plaintiffs advising them that the alleged "debt" had been sent to their office for collection. This letter was sent despite the fact that Mutual Apartment had already been served with the Small Claims Action complaint, had retained different counsel, and had filed a Motion to Dismiss in the Small Claims Action.

27. On June 28, 2017, Plaintiffs were each notified, via a credit report alert service, that their respective credit reports had been used, accessed, or obtained by Defendants on June 16, 2017. Again, at the time of the credit report procurement, the Defendants were already aware of the pending Small Claims Action and had retained legal counsel who had filed a Motion to Dismiss the day before Plaintiffs' credit report was accessed.

28. On June 28, 2017, Ms. Carlone emailed Ms. Ruthkowski, and asked why her credit report had been procured.

29. Ms. Ruthowski responded that the procurement was "done by me when I sent the file to collections[.]" This suggests that she had sent the credit report to the collection attorney Mutual Apartment and Mutual Properties had retained.

30. Ms. Carlone immediately advised her that she was disputing the procurement of her credit report and inquired why this was necessary since Plaintiffs had already filed the Small Claims Action.

31. On June 29, 2017, Mutual Apartment's Motion to Dismiss the Small Claims Action was denied. Mutual Apartment proceeded to defend against the Small Claims Action and counterclaimed for the alleged cost of repairs above the security deposit.

32. On September 12, 2017, trial of the Small Claims Action was held and judgment entered that day in Plaintiffs' favor in the amount of $474.00 plus interest and costs.

33. Despite written demand for payment and the issuance and service of an execution citation, Mutual Apartment still has not satisfied the judgment against it.

34. A citation in supplemental proceedings has been scheduled for December 7, 2017.

35. Ms. Carlone never submitted an application in connection with the rental of the apartment.

36. Mr. Johnson does not recall whether he ever submitted an application in connection with the rental of the apartment.

37. However, the Defendants' website contains a blank rental application that prospective tenants can fill out to apply for housing in either of the Defendants' apartment buildings—the River's Edge or the Cowesett Terrace (the "Rental Application").

38. The Rental Application provides:

> This is to inform you that as part of our procedure for processing your application, an investigative report may be made whereby information is obtained through personal interviews with third parties, such as family members, business associates, financial sources, friends, neighbors, or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics, and mode of living, whichever may be applicable. You have the right to make a written

request within a reasonable time for a complete and accurate disclosure of additional information concerning the nature and scope of the investigation.

39. The Rental Application does not disclose that by executing it, the applicant is agreeing to, directing, or instructing the Defendants to obtain or use his or her credit report.

40. The Rental Application also does not disclose that by executing it, the applicant is agreeing to, directing, or instructing the Defendants to obtain or use any consumer report in connection with collection activities after the tenant vacates the property.

41. The FCRA prohibits "person[s]" from using or obtaining a "consumer report" for any purpose unless it is obtained for a "purpose for which the consumer report is authorized to be furnished under this section" and "the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f).

42. Permissible purposes for obtaining a consumer report include requesting one in connection with a credit transaction, an existing credit obligation, employment, underwriting insurance, eligibility for a governmental license or benefit, or another "legitimate business need" either in connection with a business transaction "initiated by the consumer" or "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3).

43. Persons may also obtain a consumer report "[i]n accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a)(2).

44. In the absence of "written instructions" from a consumer, the sole permissible purpose for a landlord or its agent to access a consumer report is in connection with a rental application or decision to rent or lease real property.

45. A credit report constitutes a "consumer report" as that term is defined by the FCRA.

46. The Plaintiffs and Class members never provided the Defendants with written instructions to access a consumer report for any reason, let alone in preparation for potential litigation against them.

47. The Defendants were without a legitimate business need to obtain any consumer reports.

48. In 2000, the Federal Trade Commission ("FTC") issued an advisory opinion stating that "no permissible purpose exists under [the FCRA]" for a landlord's attorney, "seeking to collect a disputed debt arising from a month-to-month lease," "to obtain a consumer report in connection with legal action after the tenant has vacated the apartment." *Advisory Opinion to Long* (07-06-00).

49. More generally, litigation or preparation for litigation is not a permissible purpose of obtaining a consumer report. 16 C.F.R. § 600 App., 55 Fed. Reg. 18804, 18816 (May 4, 1990); *Advisory Opinion to Greenblatt* (10-27-98).

## Class Allegations

50. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

51. The class consists of all "consumers" who, in the five (5) years preceding the filing of this complaint, had their credit report obtained or used by Defendants, or one of them, for a purpose other than in connection with consideration of a rental application or otherwise in connection with the decision to lease or rent real property to the Class member or an entity related to that Class member.

52. The Class is so numerous that joinder of all members is not practicable.

53. Upon information and belief, there are dozens and potentially hundreds of Class members.

54. There are questions of law and fact common to the Class members, which common questions predominate over any questions relating to individual Class members. The predominant common questions are: (1) whether the Defendants had a permissible purpose in obtaining or using consumer reports for any reason other than in connection with a rental application or a decision to lease or rent real property; (2) whether such action constitutes a violation of the FCRA; and (3) whether Plaintiffs and the Class members were damaged thereby and the extent of their damages for such violations.

55. The Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

56. Plaintiffs will fairly and adequately represent the Class members. Plaintiffs have retained counsel experienced in FCRA litigation.

57. A class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible and members of the Class are likely to be unaware of their rights.

58. In addition, without class relief, the majority of these violations of law will proceed without remedy and the Defendants will likely continue such unlawful conduct. Class-wide damages are essential to induce Defendants to comply with the FCRA.

59. Given the size of Defendants' operations, individual relief only by those who are aware of their rights will not deter future unlawful conduct in violation of the FCRA.

## **COUNT I - FCRA**

60. Plaintiffs restate and reallege paragraphs 1-59 as if set forth fully herein.

61. Plaintiffs and all members of the Class are "consumers" as that term is defined by 15 U.S.C. § 1681a.

62. Defendants at all relevant times were acting by and through their agents and employees who were acting within the course and scope of their agency and employment and/or under the direct supervision and control, and at the express or implied direction, of the Defendants.

63. Pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o, Defendants are liable for willfully and/or negligently violating 15 U.S.C. § 1681b(f) by obtaining, using, and/or accessing, Plaintiffs' and the Class members' "consumer report" without a permissible purpose.

64. The Defendants' conduct was willful as the language of 15 U.S.C. § 1681b is clear and unambiguous and there is no reasonable reading of the FCRA that could support Defendants' actions.

65. In fact, case law and the FTC's advisory opinions and 1990 Commentary on the FCRA served to put Defendants on notice that their actions in accessing a consumer report for litigation-related reasons or for reasons otherwise unrelated to consideration of a rental application or otherwise in connection with a determination to rent or lease real property were in violation of the FCRA.

66. Defendants had substantial notice that their conduct violated the FCRA but refused to comply with its provisions.

67. Defendants, as sophisticated business entities with a long history of serving as residential and commercial landlords and property managers, were certainly aware of the FCRA.

68. In fact, pursuant to 15 U.S.C. § 1681e, in order to have obtained, accessed, or used a consumer report, the Defendants necessarily must have certified to the credit reporting agency a purpose for such action and that the information would be used for no other purpose, further demonstrating their knowledge regarding the need to have a permissible purpose.

69. Plaintiffs intend to conduct discovery into any such certification(s) and the procedures utilized by the credit reporting agency(ies) to determine whether consumer reports were obtained under false pretenses and whether the Defendants and the credit reporting agency(ies) complied with the certification-related requirements including 15 U.S.C. § 1681e.

70. As a result of the Defendants' actions, the Plaintiffs and Class members have suffered particularized and concrete injuries.

71. The Plaintiff and Class members have suffered invasions of their legally protected right to privacy.

72. Plaintiffs and Class members have had their personal and private identifying and account-related information unlawfully and without permissible purpose disseminated to the Defendants and potentially its related affiliates and agents including attorneys.

73. Defendants' conduct and actions have exposed Plaintiffs and the Class members to an increased risk of identity theft and data breach resulting in anxiety, emotional distress, and mental anguish.

74. The security of the consumer reports and the computer and other systems used to store or disseminate the consumer reports obtained by the Defendants is unknown and, given the increased risk associated with data breaches, its possession of those consumer reports, including potential access by affiliates and agents, has significantly harmed Plaintiffs and Class members.

75. Moreover, in certain instances, including the Plaintiffs', the personal and private information was used <u>against</u> the consumer to seek to collect on a debt that may not have been owed.

76. Privacy and the security of personal identifying and financial information are precisely the types of interests the FCRA was enacted to protect.

77. Upon information and belief, Defendants' usual and customary practice is to use, obtain, or access consumer reports for impermissible purposes including in connection with tenants who are alleged to have defaulted under their leases.

78. Upon information and belief, the practice of using, obtaining, or accessing consumer reports for impermissible purposes was practiced by Mutual Properties as property manager for other related entities across all rental properties owned by a "Mutual Properties" or Mr. Soscia-related entity, including office, commercial, retail, and residential properties. Plaintiffs intend to discover whether Mutual Properties or a successor used, accessed, or obtained consumer reports without a permissible purpose on behalf of other property owners who also may have violated the FCRA.

79. As a result of Defendants' violations of the FCRA, Plaintiffs and the Class are entitled to actual, statutory, and punitive damages, in an amount to be determined at trial by a jury, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and the Class and against Defendants:

1. Granting certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

2. Temporarily and permanently enjoining Defendants from continuing the unlawful practices alleged in this Complaint, including but not limited to prohibiting Defendants from using,

    accessing, or obtaining consumer reports without a permissible purpose;

3. Awarding damages, including statutory damages, actual damages including emotional and other distress, and punitive damages;

4. Awarding attorneys' fees, litigation expenses, and costs of suit;

5. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

6. Such other and further relief the Court deems just.

## JURY DEMAND

Plaintiffs hereby demand a jury on all claims so triable.

KRISTEN CARLONE AND THOMAS JOHNSON, on behalf of themselves and others similarly situated

By Their Attorney,

ENRIGHT LAW LLC

/s/ Thomas J. Enright
Thomas J. Enright (#7356)
696 Reservoir Avenue
Cranston, RI 02910
(401) 526-2620
(401) 457-7117  FAX
tom@enrightlawoffice.com

DATED:  November 8, 2017